UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA B. ATCHISON, as Personal
Representative of the Estate of
JOHN ATCHISON, deceased,

        Case No. 10-10545

    Plaintiff,

        Honorable Gerald E. Rosen
v.        United States District Judge

        Honorable R. Steven Whalen
E. STA. CRUZ., ET AL.,        United States Magistrate Judge

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Before the Court are Defendants' Motion to Dismiss [Doc. #12] and Plaintiff's Motion for Leave to File First Amended Complaint [Doc. #16], which have been referred for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's motion to amend be GRANTED, and that Defendants' motion to dismiss be DENIED AS MOOT.[1]

**I.   FACTS**

This lawsuit is brought by Barbara B. Atchison, the personal representative of the Estate of John Atchison, deceased. The facts, as set forth in the proposed amended complaint and other court records, are as follows.

---

[1] Ordinarily, a motion to amend a complaint would be considered non-dispositive, and therefore subject to a Magistrate Judge's hearing and determination under 28 U.S.C. § 636(b)(1)(A). In this case, however, the Plaintiff concedes that the original complaint was improperly brought under 42 U.S.C. § 1983, which does not apply to federally employed defendants, and names the United States, which is protected from suit by sovereign immunity. Instead, the Plaintiff asks this Court to permit him to file an amended complaint which corrects these deficiencies. Under these circumstances, denying the Plaintiff's motion for leave to amend the complaint would necessarily result in dismissal of this action with prejudice, functionally making it a dispositive motion and requiring that I proceed by Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). *See Vogel v. U.S. Office Products Co.*, 258 F.3d 509, 514 -515 (6th Cir. 2001) ("In determining whether a particular motion is dispositive, this court undertakes functional analysis of the motion's potential effect on litigation.").

On September 18, 2007, John Atchison was charged in a three-count indictment in the Eastern District of Michigan with attempted coercion and enticement of a minor, 18 U.S.C. § 2422(b), aggravated sexual abuse, 18 U.S.C. § 2241(c), and interstate travel with intent to engage in illicit sexual conduct, 18 U.S.C. §§ 2423 (b) and (c). *See United States v. Atchison*, E.D. Mich. Docket No. 07-20463, Doc. #2.  The charges arose out of Mr. Atchison's communications with an undercover officer posing as the mother of a five-year-old girl, culminating in his travel from Florida to Michigan on September 16, 2007, ostensibly for the purpose of engaging in illicit sexual activity with a minor child. Mr. Atchison was arrested when he arrived at Detroit Metro Airport.  At his arraignment on September 18, 2010, Mr. Atchison consented to an order of detention pending trial. *Id.*, Doc. #6.

Mr. Atchison was originally detained at the Sanilac County Jail. During the night of September 19-20, 2007, he unsuccessfully attempted suicide. On September 20th, he was transferred to the Federal Detention Center in Milan, Michigan. He was interviewed on that date by Defendant Oliverio, a psychologist employed by the U.S. Bureau of Prisons. Dr. Oliviero noted that Mr. Atchison had attempted suicide earlier that day, and placed him on a temporary suicide watch, although opining that he was "not seen as suicidal." *Amended Complaint*, ¶¶ 6-9.  Dr. Oliviero also conducted a suicide risk assessment, and, noting that "the precise prediction of suicidal behavior was difficult to determine and should be modified as circumstances change," rated the "current overall risk of suicide to be low." *Id.* ¶ 10.

Defendant Gillespie, a Staff Psychologist at Milan, conducted a psychological review of Mr. Atchison on September 27, 2007, "during which she noted he did not appear to be experiencing significant psychological distress and noted his current risk of self harm to be low."  *Id.* ¶ 13. Defendants Cruz and Gidel, physician assistants, examined Mr. Atchison on September 20 and September 22, 2007, respectively. Both noted his recent suicide attempt. *Id*. ¶¶ 12, 14.  Plaintiff alleges that at some point, Mr. Atchison was taken off of the suicide watch. *Id.*, ¶ 25.

On October 5, 2007, while still in federal custody at Milan, Mr. Atchison committed suicide by hanging himself.  *Id*. ¶ 16.

Plaintiff alleges a Fifth Amendment Due Process claim, specifically that the Defendants "exhibited deliberate indifference to John Atchison's serious medical and psychiatric needs by:

a. failing to obtain a full, comprehensive, psychiatric assessment to discern John Atchison's mental status before permitting a suicide watch or suicide prevention methods to be discontinued.

b. failing to discern whether John Atchison was a suicide risk before discontinuing a suicide watch." *Id.* ¶ 25.

Plaintiff further alleges that Mr. Atchison's "constitutional rights to adequate care for his serious medical needs, including his suicidal tendencies, were clearly established at the time of his death; therefore, Defendants are not entitled to qualified immunity." *Id.* ¶ 26.

## II.  STANDARD OF REVIEW RE: MOTIONS TO AMEND

Fed.R.Civ.P. 15(a) states that after a responsive pleading is filed, a complaint may be amended only by leave of the court, and that "leave shall be freely given when justice so requires." However, when a proposed amended complaint would not survive a motion to dismiss, the court may properly deny the amendment as futile. *Neighborhood Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir. 1980); *Thiokol Corporation v. Department of Treasury*, 987 F.2d 376 (6th Cir. 1993). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court...." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

## III.  DISCUSSION

The Defendants argue that the amended complaint would not survive a motion to dismiss because based on the Plaintiff's allegations, they are protected by qualified immunity.

Qualified immunity is an affirmative defense. A state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151,

150 L.Ed.2d 272 (2001). Under *Saucier*, the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation. However, in *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the Supreme Court held that the two-step sequential analysis set forth in *Saucier* is no longer mandatory. Rather, *Pearson* commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis:

> "On reconsidering the procedure required in *Saucier,* we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

*Pearson*, 129 S.Ct. at 818.

In this case, I will first discuss whether the constitutional right that the Defendants are accused of violating was clearly established. The right in question, however, cannot be a generalized right. "It must be clearly established in a 'particularized' sense, so that 'the contours of the right' are clear enough for any reasonable official in the defendants' position to know that what the official is doing violates that right." *Danese v. Asman,* 875 F.2d 1239, 1242 (6th Cir. 1989)(citations omitted). *See also Myers v. Potter*, 422 F.3d 347, 356 (6th Cir.2005) ("[W]e do not assess the right violated at a high level of generality, but instead, we must determine whether the right [is] 'clearly established' in a more particularized ... sense"); *Martin v. Heideman*, 106 F.3d 1308, 1312 (6th Cir.1997) ("Because most legal rights are 'clearly established' at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly' violated").

The particularized right here, as alleged in the amended complaint, is Mr. Atchison's Fifth Amendment Due Process[2] right to "adequate care for his serious medical needs, including his suicidal

---

[2] Although federal pretrial detainees' rights are based on the Fifth Amendment's Due Process Clause, they are analogous to the Eighth Amendment rights of prisoners, *see Barber v. City of Salem, Ohio,* 953 F.2d 232, 235 (6th Cir. 1992), in order "to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir. 1985). Thus, as would be the case with a state pretrial

tendencies," and to be properly assessed for risk of suicide before being taken off suicide watch. The Plaintiff alleges that the Defendants were deliberately indifferent to that right.

In *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court has held that prisoners have a constitutional right, under the Eighth Amendment, to medical care. In *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001), the Sixth Circuit held that "[w]hile the right to medical care for serious medical needs does not encompass the right 'to be screened correctly for suicidal tendencies,' we have long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." (Citations omitted). In other words, once it is *known* that a prisoner has a medical condition that requires medical needs, including suicidal propensities, such needs must be supplied. The right to adequate assessment of and protection against the risk of suicide was clearly established by September of 2007, when the events in the present case took place. *See Comstock,* at 702 (citing *Yellow Horse v. Pennington Cty.,* 225 F.3d 923, 927 (8th Cir. 2000)(holding that prisoner "had a clearly established constitutional right to be protected from the known risks of suicide and to have his serious medical needs attended to").

In *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994), the Sixth Circuit, citing numerous cases from this and other circuits, held:

> "A detainee's psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies. *Danese v. Asman,* 875 F.2d 1239, 1243-44 (6th Cir.1989), *cert. denied* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990); *Roberts, supra,* 773 F.2d at 724. See also *Bowen v. City of Manchester,* 966 F.2d 13, 16 (1st Cir.1992); *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1068 (3rd Cir.1991); *Buffington v. Baltimore County, Maryland,* 913 F.2d 113, 119-20 (4th Cir.1990); *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182, 1187 (5th Cir.1986); *Hall v. Ryan,* 957 F.2d 402, 406 (7th Cir.1992)."

In one of the cases cited, *Bowen v. City of Manchester*, 966 F.2d 13, 16 -17 (1st Cir. 1992), the First Circuit, itself referencing the Sixth Circuit decision in *Danese*, held that "[b]y 1986 it was clearly established that police officers violate the fourteenth amendment due process rights of a

---

detainee's Fourteenth Amendment claim, Plaintiff's Fifth Amendment claims will be analyzed under an Eighth Amendment paradigm.

detainee if they display a 'deliberate indifference' to the unusually strong risk that a detainee will commit suicide." *See also Probst v. Central Ohio Youth Center*, 511 F.Supp.2d 862, 871 (S.D.Ohio,2007) ("[A]lthough the right to be 'correctly screened' for suicidal tendencies is not clearly established, once it has been shown that a prisoner is at risk for suicide, he has a clearly established right to medical treatment free from deliberate indifference")(citing *Comstock*).

Mr. Atchison was transferred to the Milan facility less than 24 hours after an actual suicide attempt. The amended complaint alleges that the Defendants were acutely aware of the attempt, and that a suicide risk assessment was performed. Those facts are not in dispute, although the precise nature and extent of the evaluation, as well as the steps taken (or not taken) to address any risk of suicide remain open areas of inquiry. Because Mr. Atchison was known to present a risk of suicide, he had a clearly established Due Process right to appropriate assessment and protection against that risk. Therefore, the Plaintiff has cleared the first hurdle in defeating a qualified immunity defense.

The next question is whether the amended complaint adequately sets forth allegations that the Defendants violated this clearly established right, that is, that they were deliberately indifferent to the known risk that Mr. Atchison would kill himself.

"A cause of action under § 1983 for failure to provide adequate medical treatment requires a showing that the defendants acted with deliberate indifference to the serious medical needs of the pretrial detainee." *Estate of Carter v. City of Detroit,* 408 F.3d 305, 311 (6th Cir.2005) (internal citations and quotations omitted). A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary, supra*, 273 F.3d at 702. Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

-6-

As discussed above, "[a] detainee's psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies." *Horn by Parks, supra*, 22 F.3d at 660. Mr. Atchison's suicidal tendencies were dramatically manifested while at the Sanilac County Jail, only hours before he was transferred to Milan. The amended complaint adequately alleges the objective prong of the deliberate indifference inquiry.

As to the subjective component, the amended complaint clearly alleges that the Defendants knew of Mr. Atchison's suicide attempt, and at least temporarily placed him on a suicide watch. Therefore, the Defendants "subjectively perceived facts from which to infer substantial risk to the prisoner," and they "did in fact draw the inference." *Comstock, supra*, 273 F.3d at 702.

Finally, the amended complaint alleges that the Defendants disregarded the known risk to Mr. Atchison. The Defendants argue that because they did assess Mr. Atchison for suicide risk and determined that the risk was low, the Plaintiff has at most stated a claim of medical negligence, not deliberate indifference, stating that "the right to adequate medical care does not encompass the right to be diagnosed correctly." *Motion to Dismiss* [Doc. #12], p.11 (citing *Sanderfer v. Nichhols*, 62 F.3d 151, 154 (6th Cir. 1995) ("Deliberate indifference...does not include negligence in diagnosing a medical condition.").[3]

The Defendants are correct that mere medical malpractice does not rise to the level of an Eighth Amendment violation. *See Estelle v. Gamble, supra*, 429 U.S. at 105-106 ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"). However, deliberate indifference is not restricted to cases where there is a complete absence of care, and the fact that an inmate receives *some* level of medical attention does not preclude constitutional scrutiny of the quality of that care. That assessment necessitates a factual inquiry. In *Waldrop v. Evans*, 871 F.2d 1030, 1035

---

[3] The Defendants have incorporated their arguments in their motion to dismiss into their response to Plaintiff's motion to amend.

(11th Cir. 1989), the issue was whether "decisions to remove [the prisoner] from medication and to restore the medication without Lithium constituted deliberate indifference to [his] psychiatric condition." Affirming a denial of summary judgment, the Eleventh Circuit stated, "We cannot determine...whether [the doctor's] treatment constituted deliberate indifference to Waldrop's serious psychiatric needs because that treatment must be evaluated according to professional standards," and thus "there is a disputed issue of material fact regarding the quality of care...provided to [the prisoner]." *Id*. *Waldrop* relied in part on *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986), where the Court held that "[w]hether an instance of medical misdiagnosis resulted from deliberate indifference or negligence is a factual question requiring exploration by expert witnesses."

In *Terrance v. Northville Regional Psychiatric Hosp*., 286 F.3d 834, 844 (6th Cir. 2002), a case also involving a claim of deliberate indifference to a prisoner's psychiatric needs, the Sixth Circuit relied on *Waldrop* in reversing a grant of summary judgment:

> "The [*Waldrop*] court stated that the relevant inquiry as to whether the defendants provided grossly inadequate care was 'whether a reasonable doctor ... could have concluded his actions were lawful.' *Id.* at 1034. In *Waldrop,* the court affirmed the denial of defendants' motion for summary judgment in a § 1983 action finding that a particularized, fact-specific inquiry was a necessity to the proper analysis of plaintiff's claim. Here, as in that case, the proper analysis of Terrance's claim requires a similar inquiry."

There are too many unresolved factual issues in the present case to find that amending the complaint would be futile. The amended complaint alleges that Mr. Atchison attempted suicide while at the Sanilac County Jail; he was evaluated when he was transferred to Milan the same day, and on subsequent days; although he was deemed to be a "low" risk of suicide despite his attempt to hang himself, he was temporarily placed on suicide watch; and he was subsequently removed from suicide watch, after which he killed himself. What kind of evaluation did Mr. Atchison receive at Milan? Did it comport with professional standards? Would a reasonable doctor have concluded that Mr. Atchison was a low risk of suicide, or that he should be removed from suicide watch, notwithstanding the recent attempt? Was he given any medication to lessen the risk of self-harm? Were any steps taken to monitor his condition after he was removed from suicide watch? Dr. Oliviero stated that "the

precise prediction of suicidal behavior was difficult to determine and should be modified as circumstances change." Did circumstances change, and were the Defendants deliberately indifferent to any changes in Mr. Atchison's condition?

Once the facts are fleshed out through discovery–including expert discovery– the balance may tip in favor of one party or the other, but at this early stage of the litigation, the amended complaint on its face states a plausible claim of deliberate indifference sufficient to withstand a defense of qualified immunity. The Plaintiff should therefore be permitted to amend the complaint. Further, because an amended complaint supercedes the original, the Defendants' motion to dismiss the original complaint should be denied as moot.[4]

### IV. CONCLUSION

I therefore recommend that the Plaintiff's Motion for Leave to File First Amended Complaint [Doc. #16] be GRANTED, and that the Defendant's Motion to Dismiss the original complaint [Doc. #12] be DENIED AS MOOT.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.

---

[4] An amended complaint supersedes all prior complaints. *See Parry v. Mohawk Motors of Michigan, Inc.,* 236 F.3d 299, 306 (6th Cir.2000) ("Plaintiff's first amended complaint, not his original complaint, was the legally operative complaint"); *In re Atlas Van Lines, Inc.,* 209 F.3d 1064, 1067 (8th Cir.2000) (when plaintiff files amended complaint, new complaint supersedes all previous complaints and controls case from that point forward). *See also Drake v. City of Detroit, Michigan,* 266 Fed.Appx. 444, 448, 2008 WL 482283, *2 (6th Cir.2008) ("Although Drake pleaded a claim for abuse of process in his original complaint filed in state court, that complaint is a nullity, because an amended complaint supercedes all prior complaints").

1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

Dated: January 24, 2011

_____

### CERTIFICATE OF SERVICE

I hereby certify on January 24, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on January 24, 2011: **None.**

                                        s/Michael E. Lang
                                        Deputy Clerk to
                                        Magistrate Judge R. Steven Whalen
                                        (313) 234-5217